# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RAVI KONDAPALLI, an Individual,

        Plaintiff,

vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Orion Bank,

        Defendant.
_____/    CASE NO.:  8:15-cv-1370-T-30AEP

DEMASI-KONDAPALLI, LLC, a Florida
limited liability company,

        Plaintiff,

vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Orion Bank,

        Defendant.
_____/

## ORDER APPROVING JOINT PROTOCOL
## FOR ELETRONICALLY STORED INFORMATION

      THIS CAUSE comes before the Court upon parties, Defendant the Federal Deposit
Insurance Corporation as Receiver for Receiver of Orion Bank (the "FDIC-R"), Plaintiffs, Ravi
Kondapalli and Demasi-Kondapalli, LLC (the "Plaintiffs") and Intervenor, Iberiabank's (together
with the FDIC-R and Plaintiffs the "Parties") Joint Motion for Order Approving Joint Protocol for
Electronically Stored Information (Doc. 43). Upon the stipulation of the Parties, it is hereby

**ORDERED AND ADJUDGED:**

1.     The Joint Protocol for Electronically Stored Information attached hereto is hereby expressly approved by this Court, and shall govern the production of electronically stored information in this matter.

**DONE AND ORDERED** in Chambers in Tampa, Florida on this 19th day of September, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE


<u>Copies furnished to:</u>
Counsel/Parties of Record

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RAVI KONDAPALLI, an Individual,

        Plaintiff,

vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Orion Bank,

        Defendant.

_____/   CASE NO.:  8:15-cv-1370-T-30AEP

DEMASI-KONDAPALLI, LLC, a Florida
limited liability company,

        Plaintiff,

vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Orion Bank,

        Defendant.

_____/

## JOINT PROTOCOL FOR ELECTRONICALLY STORED INFORMATION

      Defendant, Federal Deposit Insurance Corporation as Receiver for Receiver of Orion Bank (the "FDIC-R") together with Plaintiffs, Ravi Kondapalli and Demasi-Kondapalli, LLC (the "Plaintiffs") and Intervenor, Iberiabank, (together with the FDIC-R and Plaintiffs the "Parties") and their respective counsel have conferred regarding the production of electronically stored information ("ESI"), and hereby stipulate to the following terms and conditions concerning the production of electronically-stored information ("ESI") as follows:

      1.    This action relates to Orion Bank ("Orion" or the "Bank").  On November 13, 2009, the Florida Office of Financial Regulation closed the Bank and appointed the FDIC as Receiver, pursuant to 12 U.S.C. § 1821(c).

2.　　　This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37, and, insofar as it relates to ESI, this Protocol applies to Fed. R. Civ. P. 45 in all instances where the provisions of Fed. R. Civ. P. 45 are the same as, or substantially similar to, Fed. R. Civ. P. 16, 26, 33, 34, or 37.   Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.   Compliance with this Protocol shall satisfy and discharge the Parties' obligations to respond to the requests for production of documents unless otherwise agreed to by the Parties or ordered by the Court.

3.　　　In this Protocol, the following terms have the following meanings:

a.　"Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; and (iii) information created by the processing of a file into the format used by a reviewable database (e.g., BegBates, BegAttach). Metadata is a subset of ESI.

b.　"Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.   Native Files are a subset of ESI.

c.　"Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.   In the absence of agreement of the Parties or order of the Court, a Static Image should be provided in Tagged Image File Format (TIFF, or .TIF files).   If a TIFF or .TIF file cannot be created, then the Static Image should be provided in Portable Document Format (PDF).   If load files or OCR text files (Optical Character Recognition files) were created in the

process of converting        Native Files to Static Images, or if load files may be created without undue burden or cost, load files shall be provided as set forth in Exhibit A.

d. "Load File(s)" means the file necessary to load data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

e. "Party" or "Parties" include the FDIC-R,the Plaintiffs, and Iberiabank, and any person or entity that is served with a subpoena pursuant to Fed. R. Civ. P. 45 and opts-in to the Protocol.

f. "Plaintiffs" shall mean Ravi Kondapalli and Demasi-Kondapalli, LLC.

g. "Iberiabank" shall mean interventor, Iberiabank.

h. "Requesting Party" shall mean the party that has served the request for production of documents at issue.

i. "Producing Party" shall mean the party that produced the data or documents at issue.

j. "Receiving Party" shall mean the party that received the data or documents at issue.

4.     The provisions set forth in Exhibit "A" shall govern the production of ESI for all the Parties.

5.      The Parties may agree in writing (including by email) to modify, delete, or add to any of the provisions of this Protocol at any time, without the necessity of Court intervention.

6.     The Parties agree that paragraph 13 of the Agreed Protective Order filed with this Court (the "Protective Order") constitutes a Federal Rule of Evidence 502(d) order.  Accordingly, none of the Parties shall be subject to the requirements outlined in Federal Rule of Evidence 502(b). Pursuant to Rule 502(d) and the Protective Order, no applicable attorney-client privilege, attorney work product, or any other applicable privilege or ground for withholding production

(hereinafter, "Privilege") is waived by production of documents or disclosure of information pursuant to this Protocol, in which event the disclosure is also not a waiver in any other federal or state proceeding.   Upon demand, the Receiving Party shall return or destroy any paper copies to the Producing Party and delete or render inoperable all electronic copies of ESI that the Producing Party believes to be privileged or otherwise protected from disclosure.  Confidential material saved on back-up media in an electronically stored format will be deemed to comply with the provision if the Receiving Party has taken steps to ensure that the data destruction policy for the back-up media will result in the eventual destruction or overwriting of the requested information.  In the event of a dispute regarding the claim of privilege, the receiving party may retain a copy of the material for in camera review in support of the appropriate discovery motion. Similarly, each Party has a duty to notify a Producing Party if they reasonably believe that the ESI such Party produced contains information that may be protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or ground for withholding production.  To the extent that the Parties disagree over the application of these principles to any such production or challenge to the privileged nature of such material, the receiving Party shall not make use of the material in question until the matter is resolved by the Court.

7.      Nothing in this Protocol requires the Parties to produce again any information that was produced to the other prior to the execution of this Protocol.

**A.  <u>FDIC-R's ESI</u>**

8.      If the FDIC-R is in possession of certain ESI that is responsive to discovery requests propounded by the Plaintiffs or Iberiabank, and it would not be unduly burdensome or otherwise objectionable to produce such ESI, including without limitation, e-mail and documents of various types, subject to the terms of this Protocol and the Protective Order, the FDIC-R shall produce non-privileged ESI to the Requesting Party  that is responsive to any request for production of documents.

9.      The FDIC-R maintains ESI that the FDIC-R or its contractors (1) obtained from the computers, servers, and other data storage systems of the Bank, or (2) created by scanning hard-copy records of the Bank (collectively, the "Orion ESI").  To the best of its knowledge, the FDIC-R represents that the Orion ESI listed in Exhibit B is a complete and accurate listing of the ESI collected by the FDIC-R from the Bank.  The Orion ESI is maintained by the FDIC-R in its Failed Bank Data Services ("FBDS") databases.

10.     Some of the Orion ESI is not completely text-searchable, including the Fileshares and Departmental Shares (the "Non-Searchable Orion ESI").  If a Requesting Party determines that it would like text-based searches of any of the Non-Searchable Orion ESI, the FDIC-R will discuss and attempt to reach an agreement with the Party regarding the processing of the data required to make such data text-searchable and the costs involved in doing so.  If Orion and the Requesting Party are unable to reach an agreement, either Party will have the right to address issues relating to the Non-Searchable Orion ESI with the Court.  Any issues relating to the Non-Searchable Orion ESI will not be subject to this Protocol, except with respect to the procedure addressed in this paragraph, but will instead be subject to the applicable rules and laws governing the production of ESI, including but not limited to Fed. R. Civ. P. 26(b)(2)(B) and 34.

11.     The Parties agree search terms will assist in identifying documents that are responsive to the Requesting Party's requests for production.  The Parties further agree that the following databases will be subject to the application of search terms (the "Searched Databases"): (i) OR Email Database 26 V2 Part 1, (ii) OR File Shares and Miscellaneous Documents 21, (iii) OR Forensic Data, and (iv) OR Scanned Documents.

12.     The Requesting Party and the FDIC-R shall meet and confer as necessary in a collaborative effort to: (a) develop a proposed set of search terms that the FDIC-R will use in a search of the Searched Databases; and (b) determine the custodial data sources to which the search terms should be applied.  The FDIC-R shall apply the initial search terms to the Searched Database and agreed-upon custodians and shall identify for each such database: (i) the number of unique documents without families (i.e., attachments) triggered by each identified search term in the set

of proposed search terms; and (ii) the number of unique documents with families triggered by each identified search term in the set of proposed search terms. The Requesting Party and the FDIC-R shall engage in an iterative process in good faith to establish final agreed-upon search terms. During this iterative process to establish final agreed-upon search terms, the Parties will collectively modify the search terms based upon the approximate volume of data and "hit" counts from the previous iteration of searching. The Requesting Party may request a reasonable number of iterations to establish the final set of search terms. The FDIC-R reserves the right to contest the Requesting Party's search terms and requests, including objections based upon burdensomeness or cost. The Requesting Party and the FDIC-R will confer in good faith to resolve any disagreement regarding any proposed search terms or any other part of the search term procedure. If the Requesting Party and the FDIC-R are unable to agree upon a final set of search terms or any other part of the search term procedure, any Party may within a reasonable time raise the issue with the Court by motion.

13. After the Requesting Party and the FDIC-R have agreed upon search terms, or established search terms with the assistance of the Court, the FDIC-R shall apply the search terms to the Searched Databases and agreed-upon custodians in order to create a production set of files. The files will be produced, subject to the FDIC-R's search for material protected by the Bank Secrecy Act or other laws, regulations, or protections preventing the disclosure of particular information, in the format established by Exhibit A hereto. The FDIC-R will then export the production set to a Relativity workspace hosted by the FDIC-R's vendor ("Production Workspace"). The FDIC-R will provide the Requesting Party with access to their own view of the Production Workspace. All queries, searches, filters, document review, coding, and tagging of documents in the Production Workspace shall be the work product of the Party working in the Production Workspace and shall not be available to any other Party. The Requesting Party shall have access to the Production Workspace for a reasonable number of users at no cost during the pendency of this Action, provided that no more than 50 GB of data is exported to the Production Workspace as responsive to the requests. If the volume of the Production Workspace exceeds 50

GB of data, the Requesting Party is responsible for a hosting cost of $3/GB/month in excess of 50 GB for their assigned workspace.

14.     The FDIC-R need not re-produce responsive documents that have already been produced, with the caveat that the Requesting Party reserves the right to request re-production of certain documents where circumstances may reasonably warrant, and the FDIC-R reserves the right to object to any such request.

15.     At the Requesting Party's request, the FDIC-R will convert files in the Production Workspace into Static Images.  The collective cost to the Requesting Party for a set of imaged ESI is $0.01 per page of each Static Image provided.  The FDIC-R has no obligation to pay for Static Images created as a result of the production requests.

**B.  Plaintiffs' ESI**

16.     The Plaintiffs maintain electronic data on personal computers and in email inboxes and folders.

17.     If the Plaintiffs are in possession of certain ESI that is responsive to discovery requests propounded by the FDIC-R or Iberiabank, and it would not be unduly burdensome or otherwise objectionable to produce such ESI, including without limitation, e-mail and documents of various types, subject to this Protocol and the Protective Order, the Plaintiffs shall produce non-privileged ESI to the Requesting Party that is responsive to any request for production of documents from the FDIC-R or Iberiabank. The Plaintiffs reserve the right to make physical paper documents available for the Requesting Party's inspection to the extent permitted by Federal Rule of Civil Procedure 34.

18.     If the Plaintiffs believe that the application of search terms to electronic repositories would be an efficient and effective method of identifying relevant documents, the Requesting Party and the Plaintiffs shall meet and confer to develop search terms applicable to the Plaintiffs' ESI and reserve the right to raise any issue with the Court in the event that they are unable to reach agreement.

19.     The Plaintiffs need not re-produce responsive documents that have already been produced, with the caveat that the Requesting Party reserves the right to request re-production of certain documents where circumstances may reasonably warrant, and the Plaintiffs reserve the right to object to any such request.

C. **Iberiabank's ESI**

20.     Iberiabank maintains electronic data on personal computers, servers, and in email inboxes and folders.

21.     If Iberiabank is in possession of certain ESI that is responsive to discovery requests propounded by the FDIC-R or Plaintiffs, and it would not be unduly burdensome or otherwise objectionable to produce such ESI, including without limitation, e-mail and documents of various types, subject to this Protocol and the Protective Order, Iberiabank shall produce non-privileged ESI to the FDIC-R or Plaintiffs that is responsive to any request for production of documents from the FDIC-R or Plaintiffs. Iberiabank reserves the right to make physical paper documents available for the Requesting Party's inspection to the extent permitted by Federal Rule of Civil Procedure 34.

22.     If Iberiabank believes that the application of search terms to electronic repositories would be an efficient and effective method of identifying relevant documents, Iberiabank and the Requesting Party shall meet and confer to develop search terms applicable to the Iberiabank's ESI and reserve the right to raise any issue with the Court in the event that they are unable to reach agreement.

23.     Iberiabank need not re-produce responsive documents that have already been produced, with the caveat that the Requesting Party reserves the right to request re-production of certain documents where circumstances may reasonably warrant, and Iberiabank reserve the right to object to any such request.

D. **General**

24.     Notwithstanding the provisions of this Protocol, each Party shall produce any and all ESI it intends to rely upon in support of any claim or defense with respect to this case.

25.     If, after reviewing a Producing Party's production, the Receiving Party believes additional responsive documents exist but have not been produced, the Parties shall meet and confer in good faith and attempt to reach an agreement regarding any additional steps to be taken to locate and produce such documents and information, including but not limited to, additional means to identify documents, additional custodians to search, and the costs involved in taking such steps and any subsequent production. If the Parties are unable to reach an agreement, they may address this issue with the Court on an expedited basis.

26.     Upon demand, the Receiving Party shall return or destroy any privileged or protected paper copies to the Producing Party and delete or otherwise destroy all electronic copies of privileged or protected ESI produced pursuant to this Protocol, other than any copies created as a result of a disaster recovery backup procedure.

27.     The return or destruction of a document or materials over which the Producing Party has asserted a claim of Privilege as set forth above shall be without prejudice to the Receiving Party's right to contest the claim of Privilege, including seeking an order from the Court directing the production of the document on the ground that the claimed Privilege is invalid or inapplicable; provided, however, that mere production of the document or information in the course of this action shall not constitute grounds for asserting waiver of the Privilege.

28.     If the Parties disagree over the application of these principles or challenge the privileged nature of produced ESI, the Receiving Party shall not make use of the ESI in question until the matter is resolved by the Court.

29.     If a Party withholds any file on the basis of Privilege, it shall provide a categorical privilege log.   The Parties agree that the FDIC-R is not required to provide any kind of identification of the documents withheld from production as protected by the Bank Secrecy Act.

30.     Nothing in this Protocol shall waive or otherwise prejudice the Parties' rights to object to opposing party's requested search terms on grounds provided by the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or other controlling law.   As such, the Parties

reserve the right to contest and object to opposing party's requested search terms based upon burdensomeness, cost, any applicable privilege, or any other applicable protection from disclosure.

Consented to by:

/s/ David J. Tong_____
David J. Tong, Esq.
Fla. Bar. No. 437085
dtong@saxongilmore.com
Tracy M. Evans, Esq.
Fla. Bar. No. 84976
tevans@saxongilmore.com
Saxon Gilmore & Carraway, P.A.
201 E. Kennedy Blvd Ste 600
Tampa, FL 33602
Attorneys for FDIC-R

/s/ Andrew Ben Demers_____
Andrew Ben Demers, Esq.
Fla. Bar. No. 15189
ddemers@burr.com
Adrian Rust, Esq.
Fla. Bar. No: 80888
arust@burr.com
Burr& Forman, LLP
50 North Laura Street, Suite 3000
Jacksonville, FL 32202
Attorneys for Iberiabank

/s/ James D. Gibson_____
James D. Gibson, Esq.
Fla. Bar. No. 0709069
legaljimjdg@comcast.net
Gibson, Kohl, Wolff, & Hric, P.L.
400 Burns Court
Sarasota, FL  34236
Attorney for Demasi-Kondapalli, LLC

/s/ Stuart Jay Levine_____
Stuart Jay Levine, Esq.
Fla. Bar. No. 835994
slevine@walterslevine.com
Edward J. Brown, Esq.
Fla. Bar. No. 0030072
ebrown@walterslevine.com
Walters Levine, P.A.
601 Bayshore Blvd, Suite 720
Tampa, FL 33606
Attorneys for Ravi Kondapalli

**Exhibit A to Protocol**

**Form of Production for Email**

      All emails from Windows-Based ESI ("WESI"), whether produced as Native Files or Static Files, shall be produced in an accompanying Load File complete with full text extracts and the fields of metadata below, to the extent the metadata is available.  If a Party converts an email from WESI into a Static File and produces the Static File, the producing Party shall produce the full text extract and metadata of the Native File used to create the Static File to the extent metadata is available and not privileged:

1. From (email sender)

2. Author Meta (Last editor of attachment/e-doc)

3. Bates Begin

4. Bates End

5. Bates Attach Begin

6. Bates Attach End

7. BCC

8. CC

9. Sent To

10. COMPPATH (Complete Filename and path)

11. Custodian (Natural person or device in possession of the record at the time of collection)

12. Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

13. Relativity ID(Unique Document identifier – Document Control Number)

14. Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

15. MD5 Hash

16.     Application (Program commonly used to access the record)

17.     Subject (e-mail subject line)

18.     Title Meta (Title of attachment/standalone edoc metadata)

19.     Sent Date (Date e-mail was sent from sender)

20.     Sent Time (Time e-mail was sent from sender)

21.     Last Modified Date (Full date edoc was modified before saving/sending)

Electronic mail shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant and not privileged. As a general matter, subject to specific review, a message and its attachments(s) shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant or non-responsive. To the extent the message and/or one or more attachments is privileged or non-responsive, the responsive, non-privileged documents shall be produced along with placeholders indicating whether the individual record was withheld as non-responsive or privileged.

**Form of Production for Other WESI**

All other WESI (including attachments to electronic mail) whether produced as Native Files or Static Files, shall be produced with an accompanying load file complete with full text extracts and the fields of metadata listed below, to the extent the metadata is available.  If a Party converts any WESI into a Static File and produces the Static File, the producing Party shall produce the full text extract and metadata of the Native File used to create the Static File to the extent metadata is available and not privileged:

1.     Author Meta (Last editor of attachment/e-doc)

2.     Bates Begin

3.     Bates End

4.     Bates Attach Begin

5.     Bates Attach End

6.     COMPPATH (Complete Filename and path)

7.      Custodian (Natural person or device in possession of the record at the time of collection)

8.      Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

9.      Relativity ID (Unique identifier – Document Control Number)

10.     Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

11.     Group Identifier (Full range of Relativity records between beginning parent document and ending child document)

12.     Document Type (Field in Relativity describing the family relationship (parent or attachment) of a record

13.     Textpath (Relative file path to the document level extracted text file in the production volume containing the text of emails, nested email body, or raw text from images, edocs, or attachments)

14.     MD5 Hash

15.     Application (Program commonly used to access the record)

16.     Title Meta (Title of attachment/standalone edoc metadata)

17.     Created Date (Contains the date the edoc was created)

18.     Created Time (Contains the time the edoc was created)

19.     Last Modified Date (Full date the edoc was modified before saving/sending)

20.     Nativefile (Relative file path to the produced native file in the production volume)

**<u>Native Production</u>**

Generally, all WESI e-mail and non-email shall be produced by the Parties as Native Files in Load Files that can be exported to Concordance, Summation or a similar reviewable database. Exceptions may include documents imaged for redaction purposes prior to release for review and production, or documents scanned by the FDIC-R after being named receiver.  Each native WESI document produced will have a unique document identification number (i.e., "DocID") generated

and included within the production as a separate metadata field within the Data ("DAT") or Document Image Information ("DII") Load File.  The DocID shall be the default unique document identification number.  The Parties agree that the first Party to present a Native File or an image of a Native File as an  exhibit (deposition, trial, etc.), as an attachment to a pleading, or otherwise introduce the image of the Native File for the first time as evidence, shall convert the Native File to a Static Image(s) (.TIFF/.PDF), Bates-number the Static Image with the default unique document identification number ("DocID"); and provide a copy of the Native File to the other side's counsel at least two business days prior to using the Native File in a deposition or hearing. Each Static Image page shall be branded consecutively with the Native File DocID plus a suffix consisting of a dash and number for each page comprising the entire imaged document (i.e., "Native DocID"-001, "Native DocID"-002, etc.).

**Load Files**

All WESI shall be produced along with an IPRO, Opticon, or Summation DII load file indicating Bates numbers and document breaks, as applicable. Metadata shall be produced in Concordance DAT file format, DII format and summary text file for Summation, or XML format and extracted full text shall be provided in TXT file format at the record/document level. To the extent imaged documents are produced, document images will be provided in single-page TIFF format while extracted full text shall be provided in TXT file format at the document level. Non-Windows-Based Applications and Data shall be subject to the same production requirements to the extent technically and legally feasible.

**Form of Production for Data from Structured Databases**

To the extent the Parties agree upon the production of data from Structured Databases, the data will be produced in .csv or .xls format.

**Duplicates**

To avoid the production of more than one copy of a particular unique item, the Parties shall use industry standard MD5 (or SHA-1) hash values within (1) all emails identified for production, and (2) all loose electronic files identified for production.  The Parties will not de-duplicate

attachments to emails against loose electronic files.

**Other Methods to Streamline Discovery**

The Parties agree to meet and confer in good faith about any other technology or process that a producing  party proposes to use to streamline the culling, review and production of  ESI (e.g., email threading, near de-duplication, technology assisted review). The Parties shall make reasonable good faith efforts to resolve any objections to the use of such technology or process before seeking relief from the Court.

**Production Media**

Documents shall be produced on external hard drives, readily accessible computer or electronic media, e.g., CDs or DVDs, or by FTP upload ("Production Media").  All Production Media should have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and 1fp/.opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for native files.  The Production Media shall identify:  (a) the Producing Party's name; and (b) the production date.

**Color**

Where the original of a produced document is in color, and color is material to the interpretation of the document, the Receiving Party may request that the document be produced in color (whether electronic or paper).  All documents produced in imaged format will initially be produced in black and white.

**Physical Documents**

Documents that exist solely in physical hard-copy format shall be converted to Static Image (.TIFF) and produced following the same protocols outlined above. The metadata shall indicate document breaks.  The ".tiff' files shall be subject to an Optical Character Recognition ("OCR") process, and the extracted OCR text will be produced as separate metadata.

**Inaccessible Data**

The Parties need not collect documents stored on disaster recovery backup tapes unless a showing of specific need is made.

**Exhibit B to Protocol**

**Orion Databases**

| Category | System Name (Vendor) | Database  Name & Description | Date Range | Key Search Fields |
|---|---|---|---|---|
| Customer | Bankway (FIS/Metavante) | OR Metavante IBS Customer Master 1<br><br>Customer master for deposits and loans including account information with alternate names and addresses | 11/2005 - 2009 | CUST Number, CUST First Name, CUST Last Name, CUST SSN Tax ID |
| Loans | Bankway (FIS/Metavante) | OR Metavante IBS LN Escrow Details 8<br><br>Loan Escrow details associated with loans, including collection method, type, disbursement details etc. | 11/2005 - 2009 | LN Number, CUST Number, CUST SSN Tax ID, Escrow Number, CUST First Name, CUST Last Name |
| Loans | Bankway (FIS/Metavante) | OR Metavante IBS LN Master 6<br><br>Loan summary information, borrower information, and Principal and Interest details | 11/2005 - 2009 | LN Number, Account Name, Customer First Name, Customer Last Name, CUST Number, LN Orig Prin Amount |
| Loans | Bankway (FIS/Metavante) | OR Metavante IBS LN Transaction History 7<br><br>Loan transaction history associated with loan summary information | 11/2005 - 2009 | LN Number, LN Orig Prin Amount, CUST Number, CUST SSN Tax ID, Effective Date, CUST First Name, CUST Last Name |
| Deposits | Bankway (FIS/Metavante) | OR Metavante IBS Safety Box Details 11<br><br>Contains Safety Box details | 11/2005 - 2009 | CUST Name, CUST Tax Number, Box Number, Box Bank Number |
| Deposits | Bankway (FIS/Metavante) | OR Metavante IBS Account Master 2<br><br>Contains information for Certificate of Deposit, Savings and Deposits accounts such as interest rate details, customer information and account details | 11/2005 - 2009 | DEP Number, CUST First Name, CUST Last Name, CUST SSN Tax ID, CUST Number |
| Deposits | Bankway (FIS/Metavante) | OR Metavante IBS CD Transaction History 3 | 11/2005 - 2009 | DEP Number, CUST First Name, CUST Last Name, CUST |

| Category | System Name (Vendor) | Database Name & Description | Date Range | Key Search Fields |
|---|---|---|---|---|
| | | Contains transaction details records for Certificate of Deposit accounts along with transaction type, routing number, transaction amount and other details | | SSN Tax ID, CUST Number |
| Deposits | Bankway (FIS/Metavante) | OR Metavante IBS Deposit Notes 5<br><br>Contains transaction notes for and DDA accounts | 11/2005 - 2009 | DEP Number, CUST First Name, CUST Last Name, CUST SSN Tax ID, CUST number |
| Deposits | Bankway (FIS/Metavante) | OR Metavante IBS Deposit Transaction History 4<br><br>Contains transaction details records for Savings and DDA accounts along with transaction type, routing number, transaction amount and other details | 11/2005 - 2009 | DEP Number, CUST First Name, CUST Last Name, CUST SSN Tax ID, CUST Number |
| General Ledger | Bankway (FIS/Metavante) | OR Metavante IBS GL Master 9<br><br>General Ledger Account details | 11/2005 - 2009 | GL Account Number, GL Current Balance, Cost Center ID |
| General Ledger | Bankway (FIS/Metavante) | OR Metavante IBS GL Transactions 10<br><br>General Ledger transaction records with check number, effective date and other details | 11/2005 - 2009 | GL Account ID, GL Transaction Amt, Posted Date, GL Transaction Date |
| Customer | Rembrandt (Walters Kluwer Financial Services) | OR Wolters Kluwer Rembrandt Borrower Information 12<br><br>Contains borrower details and the account related information | 2004 - 2009 | CUST First Name, CUST Last Name, Employee ID Num, CUST SSN Tax ID |
| Loans | Rembrandt (Walters Kluwer Financial Services) | OR Wolters Kluwer Rembrandt Collateral 14<br><br>Contains details of collateral information related to the commercial loans | 2004 - 2009 | CUST Full Name, LN Number, CUST SSN Tax ID, LN Prop Col Name |
| Loans | Rembrandt (Walters Kluwer Financial Services) | OR Wolters Kluwer Rembrandt Loan Details 13<br><br>Contains a summary of commercial loan origination information | 2004 - 2009 | CUST Full Name, CUST SSN Tax ID, LN Number |

| Category | System Name (Vendor) | Database Name & Description | Date Range | Key Search Fields |
|---|---|---|---|---|
| Customer | EZ Lender (Fiserv) | OR Fiserv EasyLender Customer Assets and Liabilities 23<br><br>Contains Liabilities and Assets details for the customers | 2006 - 2009 | Application Num, LN Number, Borrower Number, Account Number, CUST SSN Tax ID, Company Name |
| Customer | EZ Lender (Fiserv) | OR Fiserv EasyLender Customer Master 22<br><br>Contains customer details and employment information | 2006 - 2009 | Borrower Number, CUST First Name, CUST Last Name, CUST SSN Tax ID |
| Loans | EZ Lender (Fiserv) | OR Fiserv Easy Lender Loan Master 24<br><br>Contains Loan related details such as the amount, interest rates, Property information and Underwriting information | 2006 - 2009 | LN Number, Borrower Num, CUST SSN Tax ID |
| Loans | EZ Lender (Fiserv) | OR Fiserv Easy Lender Real Estate Income and Ownership 25<br><br>Contains real estate related information for the customers | 2006 - 2009 | LN Number, Borrower Number, CUST SSN Tax ID |
| Accounts Payable | IPS Sendero (Fiserv) | OR Fiserv IPS Sendero Accounts Payable General Ledger Tkts 18<br><br>Contains Accounts Payable General Ledger ticket Information | 2003 - 2009 | Vendor Name, Invoice ID, Company Name |
| Accounts Payable | IPS Sendero (Fiserv) | OR Fiserv IPS Sendero Accounts Payable Inv and Pmts Hist 17<br><br>Contains Accounts Payable invoice and payment history details | 2003 - 2009 | Invoice ID, Purchase Order Num, Company Name, Vendor Name, Payment Acct Number, Payment Number |
| Accounts Payable | IPS Sendero (Fiserv) | OR Fiserv IPS Sendero Accounts Payable Vendor Master 16<br><br>Contains vendor details and company information | 2003 - 2009 | AP Vendor Name, Vendor Tax ID, Company Name, Vendor Contact Name |
| Customer | FedLink (Ocean Systems) | OR Ocean Systems FedLink Wire Customer Master 19<br><br>Contains Wire transfer Customer details | 2004 - 2009 | CUST CIF Number, CUST Account Number, CUST Name 1, CUST Name 2 |

| Category | System Name (Vendor) | Database Name & Description | Date Range | Key Search Fields |
|---|---|---|---|---|
| ACH/Wires | FedLink (Ocean Systems) | OR Ocean Systems FedLink Wire Transfer Details 20<br><br>Contains the transaction details for incoming and outgoing wire transfers | 2004 - 2009 | WIRE Fed Ref Num, Sender ABA Num, WIRE Benef Acct Num, WIRE Acct Num |
| Enterprise Content Management | Starview(FIS/Metavante) | OR Metavante Starview Core Banking Reports 15<br><br>Contains Cold Storage Reports for Core Banking | 11/2005 – 2009 | Report Name, Report Print Date, Report Date, Report File Name |
| Network File Shares | Network File System | OR File Shares and Miscellaneous Documents 21<br><br>Contains Shared documents, files, and user profiles from the domain server | | File Link, File Path |
| Emails | Exchange 2003 (Microsoft) | OR Email Database 26<br><br>Contains emails | 2000 - 2010 | DOCID |
| Emails | Exchange 2003 (Microsoft) | OR Email Database 26 V2 Part 1<br><br>This database only contains select documents from the Non Forensic Email collection. | 8/2000 - 9/2010 | NativeID, CNSource, NativeDocPack, Custodian,  DocDate |
| Forensic Data | N/A | OR Forensic Data<br><br>Contains details of forensic data received | N/A | NativeID, DocID |
| Scanned Data/Media | N/A | OR Scanned Documents<br><br>Contains box inventory of scanned data collection received | N/A | DocNo, ContNo |